IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Clayton Eli Watts, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>)<br>Warden of Evans Correctional Institution, )<br>)<br>Respondent. )<br>_____ ) | C/A No. 8:22-cv-03060-TMC<br><br><br>**ORDER** |

The Petitioner, Clayton Eli Watts, proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 2254 for habeas relief. (ECF No. 1). Petitioner is an inmate of the South Carolina Department of Corrections (SCDC). *Id.* at 1. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report") [1], recommending that the Petition be dismissed without prejudice and without requiring Respondent to file a return because the Petition is time-barred under the applicable statute of limitations. (ECF No. 29). After the deadline for objections to the Report had run, Petitioner filed a motion for an extension of time to file objections. (ECF No. 33). The court granted the extension. (ECF No. 34). Petitioner then timely objected to the Report. (ECF No. 36).

**STANDARD OF REVIEW**

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Elijah v. Dunbar*, 66 F.4th

---

[1] Since the filing of the Report, the magistrate judge that drafted the Report was nominated and confirmed for an Article III position as a District Court Judge. However, the court will refer to "the magistrate judge" throughout this order, as this was the position she held at the time of the filing of the Report.

1

454, 459 (4th Cir. 2023) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)).  The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).  Thus, "[t]o trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  *Elijah*, 66 F.4th at 460 (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)).  However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]"  *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017); *see also Elijah*, 66 F.4th at 460 (noting that "[i]f a litigant objects only generally, the district court reviews the magistrate's recommendation for clear error only").  Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation.  *Greenspan v. Bros. Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

Additionally, since Plaintiff is proceeding *pro se*, this court is charged with construing his pleadings and filings liberally in order to allow for the development of a potentially meritorious case.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (noting that "when confronted with the objection of a *pro se* litigant, [the court] must also be mindful of [its] responsibility to construe *pro se* filings liberally").  Accordingly, "when reviewing *pro se* objections to a magistrate's recommendation, district courts must review *de novo* any articulated grounds to which the litigant appears to take issue."  *Elijah*, 66 F.4th at 460–61.

2

This does not mean, however, that the court can ignore a *pro se* party's failure to allege or prove facts that establish a claim currently cognizable in a federal district court. *See Stratton v. Mecklenburg Cty. Dep't of Soc. Servs.*, 521 Fed. App'x 278, 290 (4th Cir. 2013) (noting that "'district judges are not mind readers,' and the principle of liberal construction does not require them to 'conjure up questions never presented to them or to construct full-blown claims from sentence fragments'" (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985))).

## BACKGROUND

The Petition indicates that Petitioner pled guilty to murder and possession of a weapon during a violent crime in the Chester County Court of Common Pleas on April 15, 2015.[2] (ECF No. 1 at 1). He was sentenced to thirty years in prison. *Id.* This included a thirty-year sentence for murder and a five-year sentence for the weapons charge, all such terms to run concurrently. Chester County Sixth Judicial Circuit Public Index, https://publicindex.sccourts.org/Chester/PublicIndex/CaseDetails.aspx (search by case numbers 2013A121000105 and 2013A121000106) (last visited Jan. 29, 2026). Petitioner did not directly appeal his conviction or sentence. *Id.*

Petitioner filed an application for post-conviction relief ("PCR") in the Chester County Court of Common Pleas on April 6, 2016. *See Watts v. State*, No. 2016-CP-12-00114, Chester County Sixth Judicial Circuit Public Index,

---

[2] Notably, the publicly-available judicial record indicates that Petitioner's guilty plea actually occurred on June 10, 2015. Chester County Sixth Judicial Circuit Public Index, https://publicindex.sccourts.org/Chester/PublicIndex/CaseDetails.aspx (search by case numbers 2013A121000105 and 2013A121000106) (last visited Jan. 29, 2026). The court takes judicial notice of Petitioner's state court actions and their respective filings, as such information is available in public court records. *E.g. Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (indicating that courts "may properly take judicial notice of matters of public record").

3

https://publicindex.sccourts.org/Chester/PublicIndex/CaseDetails.aspx (search by case number 2016-CP-12-00114) (last visited Jan. 29, 2026). In his Amended PCR Application, Petitioner, through counsel, argued three grounds for relief, which are listed here verbatim:

> a. Failure to request a juvenile waiver hearing pursuant to *Kent v. U.S.*, 86 S. Ct. 1045 [(1966]).
> b. Failure to file appropriate motions to have the Applicant's statement(s) to police suppressed due to his age.
> c. Failure to request a change of venue due to the victim being employed within the Chester County Courthouse.

*Id.* (Amended PCR Application filed May 30, 2019). A Circuit Court judge held an evidentiary hearing on July 29, 2019 at the Lancaster County Courthouse, and Petitioner was represented by counsel at the hearing; following the hearing, the judge entered an Order of Dismissal on November 8, 2019. *Id.* (Order of dismissal filed Nov. 8, 2019). Petitioner's counsel filed an appeal of the denial on his behalf; however, attached to the notice of appeal, counsel included a statement indicating (1) that he did not receive a copy of the Order of Dismissal until January 28, 2020, which is why he submitted the appeal on January 31, 2020; (2) that he was "not aware of any appealable issues arising from the PCR hearing"; and (3) that Petitioner had instructed him to file an appeal. *Id.* (Notice of Appeal filed on Feb. 4, 2020)[3]. On September 7, 2021, the South Carolina Court of Appeals denied a petition for writ of certiorari, and a remittitur was entered on the PCR court docket on September 21, 2021. *Id.* (Order of Denial and Remittitur filed Sept. 27, 2021). In its order, the South Carolina Court of Appeals indicated, "Petitioner's counsel asserts that the petition is without merit and requests permission to withdraw from further representation. Petitioner has not filed a pro se petition." *Id.*

---

[3] While the Notice of Appeal was dated January 31, 2020, the stamp indicates that the Chester County Court of Common Pleas received the notice, and the notice was then filed, on February 4, 2020.

4

Thereafter, Petitioner filed the instant Petition, asserting three grounds for relief, provided here substantially verbatim:

> **GROUND ONE**: Trial Counsel failed to suppress confession statement of client.
> *Supporting facts*: At PCR trial counsel testified that client informed him he was robbed by co-defendants. Petitioner (client) was juvenile (17) at time of interrogation and not under arrest but did not have guardian or representative present during 10 hours of questioning, this denies client basic juvenile rights. Client even told authorities he was robbed. If the unlawful confession was vacated it would then result in a decision of a jury on the basis of guilt or innocence.
>
> **GROUND TWO**: Trial counsel failed to request a juvenile waiver hearing pursuant to *Kent v. U.S.*, 86 S. Ct. 1045.
> *Supporting facts*: Petitioner at time of the offense was a juvenile being age 17. His competency evaluation given at age 19 was done under the parameters of *Kent*. In the 3 point evaluation consisting of (1) dangerousness, domain fell in low risk; majority of juveniles pose greater risk; (2) sophistication, maturity domain fell in high range; majority of juveniles display less; (3) treatment amenability fell in high range; majority of juveniles display less. Evaluation done by Geoffrey R. McKee, PHD, ABPP. This calls to mind the question of whether defendant could have been rehabbed under different circumstances.
>
> **GROUND THREE**: Failure to request change of venue due to the victim being employed within the Chester County Courthouse.
> *Supporting facts*: Defendant attended bond hearings and others before the Court where victim was employed calling to mind potential for unfair or biased proceedings.

(ECF No. 1 at 5, 7, 8). The Petition requests that the convictions be "removed" which the court construes as requesting that the convictions be vacated. *Id.* at 15.

Upon review of the record, the magistrate judge determined that Petitioner's Petition for a writ of habeas corpus should be dismissed without prejudice because the Petition is time-barred. (ECF No. 29 at 5–9). The Report noted that habeas actions are subject to a one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Id.* at 5 (citing 28 U.S.C. § 2244(d)(1)). The Report further acknowledged that such statute of limitations

5

is tolled during the time a state post-conviction action is pending. *Id.* (citing 28 U.S.C. § 2244(d)(2). In reviewing the procedural history of Petitioner's state case and his PCR case, the magistrate judge determined that Petitioner's conviction became final on June 20, 2015, and he filed his PCR application on April 6, 2016. *Id.* at 7. Therefore, 291 days of non-tolled time had lapsed prior to he filing of his PCR application. The Report indicated that the PCR action became final on September 27, 2021 after remittitur was entered on the PCR docket, and, therefore the statute of limitations began to run again on that date. *Id*. at 8. Accordingly, the magistrate judge concluded that Petitioner had until December 21, 2021 to file a federal habeas petition, but Petitioner did not file his Petition until, at the earliest, August 31, 2022.[4] *Id.* Therefore, the magistrate judge recommended that the Petition be dismissed without prejudice due as untimely. *Id.*

## DISCUSSION

Petitioner filed objections to the Report. (ECF No. 36). In his objections, Petitioner argues that his Petition should be considered on the merits based on equitable tolling principles because his "deadline mishaps have been the product of Institutional operations alongside Covid quarantines, staff shortages, and restricted movements." *Id.* at 2. He also argues that "actual innocence" is an exception to the AEDPA's timeliness requirements. *Id.* Petitioner contends that his confession was improperly taken, and if the confession is thrown out, there would be no conviction. *Id.* at 2 – 6. Petitioner contends that all other evidence in the case "could have been argued as mere coincidence" and would not support a conviction. *Id.* at 4.

---

[4] As noted in the Report, the envelope was not stamped as being received by the prison mail room. However, Petitioner dated the Petition "August 31, 2022", and it was postmarked on September 6, 2022. (ECF No. 1-1). Accordingly, the court gives Petitioner the benefit of the August 31, 2022 date that he used when dating the Petition.

*Equitable Tolling*

In his objections, Petitioner does not aver that his Petition was timely. Rather, he alleges that his untimeliness should be forgiven based on equitable tolling. *Id.* at 2. The United States Supreme Court has "made clear that a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations omitted). "[A]ny resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

In his objections, Petitioner references an affidavit from a mailroom attendant, which he attached to his previously-filed motion for an extension of time to file objections. (ECF No. 36 (citing to (ECF No. 33-1)). This affidavit, which appears to be written in Petitioner's handwriting, describes the staffing shortages at Evans Correctional Institution and how inmates cannot go to the mailroom without an "order to report." (ECF No. 33-1). The affidavit further indicates that if an inmate requests an "order to report" it can take "2-3 weeks." *Id.*

However, in the motion that was attached to the affidavit, Petitioner did not argue that he filed his Petition late because of procedural hurdles within the jail. Instead, Petitioner indicated:

> Now as to the issue of my filing deadline of 12-10-2021 for my Federal Habeas Corpus, I was not properly advised by my court appointed appeals attorney for my PCR as to my proper deadline. Had it been made known to Petitioner of the 74 days of non-tolled time, the deadline would have been reached in good and timely fashion. The evidence of said statement being my record of meeting deadlines that have been hindered by sources outside of myself.

(ECF No. 33 at 2).

7

As a threshold matter, the court finds that the circumstances of this case do not support a finding that Petitioner has been pursuing his rights diligently. In fact, prior to the filing of his federal habeas Petition, his PCR counsel filed an appeal of the denial of the PCR application on his behalf, at his direction, but included in that appeal counsel indicated that he did not see any appealable issues. *See Watts v. State*, No. 2016-CP-12-00114, Chester County Sixth Judicial Circuit Public Index, https://publicindex.sccourts.org/Chester/PublicIndex/CaseDetails.aspx (search by case number 2016-CP-12-00114), (Appeal filed Feb. 4, 2020), (last visited Jan. 29, 2026). The court of appeals did not decide Petitioner's appeal until September of 2021—a year and a half after the notice of appeal was filed. As noted by the South Carolina Court of Appeals in their order, Petitioner did not file any pro se petition or challenge to the PCR court's denial of his application. *Id.* (Order filed Sept. 7, 2021). He then waited almost an entire year before filing his federal habeas Petition. The court finds that these facts, when viewed together, do not support a finding that Petitioner was diligently pursuing his rights.

Furthermore, to the extent Petitioner argues that the conditions of his place of confinement prevented him from meeting the statute of limitations deadline, the court notes that the affidavit to which Petitioner refers indicates that it may take "2- 3 weeks" for an inmate to be allowed to report to the mailroom. (ECF No. 33-1). Yet, the Petition was filed almost *eight months* past the deadline. Accordingly, the court finds that Petitioner has failed to meet his burden in showing how the conditions he described prevented him, by no fault of his own, from filing his Petition with the court. Additionally, the court notes that Petitioner's own statements regarding how the deadline "would have been reached" had he been aware of the deadline discounts Petitioner's arguments that the circumstances of his facility of confinement prevented him from being able to timely file the Petition.

Additionally, to the extent Petitioner's filings could be liberally construed to assert that the statute of limitations should be equitably tolled based on his prior counsel's failure to instruct him of his deadline for filing a federal habeas petition, the court finds that this does not rise to the level of an "extraordinary" circumstance that prohibited him from timely filing. In *Holland v. Florida*, the Supreme Court recognized that the case before it, wherein the petitioner had specifically requested that counsel file a petition, but counsel failed to do so in a timely manner, was different than the "garden variety claim" of attorney negligence such as improperly calculating a deadline. *Holland*, 560 U.S. at 651–52. Here, there is no indication that Petitioner requested that his prior counsel file his petition for him and that prior counsel did not do so. Instead, the facts before the court indicate that Petitioner was mistaken as to his deadline for filing, which does not rise to the level of being an "extraordinary circumstance" to excuse his failure to timely file his Petition. Accordingly, the court overrules Petitioner's objections and finds that he is not entitled to equitable tolling based on the facts presented to the court.

### ***Actual Innocence***

In his objections, Petitioner also raises the fact that "actual innocence" is an exception to the requirement that a petition be filed within the time for the statute of limitations. (ECF No. 36 at 2). However, Petitioner does not outright claim that *he* is actually innocent of the crimes of which he was convicted. Instead, he contends that if certain evidence in his case had been suppressed, the remaining facts would not have been enough to *support* his convictions because all that would have been left "could have been argued as mere coincidence." *Id.* at 4. He states, "No Confession. No Conviction." *Id.* at 5.

As an initial matter, the court notes that Petitioner *pled guilty* to the charges. He was not convicted at trial after a jury weighed the evidence against him. His claims of actual innocence, to

9

the extent his arguments could even be called such, are directly in contravention of his standing before the tribunal, under oath, and affirming his guilt for such acts. In fact, such contradiction in two statements made under oath could very well be considered perjury under both South Carolina and federal law. *See* 18 U.S.C. § 1621 (federal statute regarding perjury); S.C. Code Ann. § 16-9-10 (South Carolina statute regarding perjury). Still, the court will consider Petitioner's argument as set forth in his objections.

The Supreme Court of the United States has indicated that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). In other words, "actual innocence" can act as a "'gateway' through which otherwise procedurally defaulted or out-of-time claims can be addressed. *Long v. Hooks*, 972 F.3d 442, 470 (4th Cir. 2020). "Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999). In other words, it is not enough for Petitioner to claim that no jury would have convicted him based on the admissible evidence if his confession had been suppressed. Instead, Petitioner would have to make a credible showing that he is *actually innocent of murder and of the weapons charge*—i.e. that he was not involved in the killing of his grandmother. He has made no such showing, and, in fact, the evidence he claims should have been inadmissible at trial was his *detailed confession of guilt*. His claims that such confession should have been suppressed focused on his age at the time of the confession and allegations that he was questioned in violation of the law regarding minors – not based on the fact that his confession was allegedly false.

Accordingly, because Petitioner has not made a credible showing of actual innocence, the court overrules this objection.

## CONCLUSION

As the court has determined that Petitioner has failed to demonstrate that he is entitled to equitable tolling and has failed to set forth a credible showing of actual innocence to excuse the late filing of his Petition, the court hereby adopts the Report, (ECF No. 29), and incorporates it herein. It is, therefore, **ORDERED** that the Petition is **DISMISSED without prejudice and without requiring Respondent to file a return.**

In addition, a certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the instant matter, the court finds that Petitioner failed to make a "substantial showing of the denial of a constitutional right." Accordingly, the court declines to issue a certificate of appealability. However, the Petitioner is advised that he may seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit pursuant to Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                                                        s/Timothy M. Cain
                                                                         Timothy M. Cain
                                                                         Chief United States District Judge

February 10, 2026
Anderson, South Carolina